(C. D. 722)

PUREPAC CORPORATION *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 13, 1943)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph B. Brady* and *Richard F.. Weeks*, special attorneys), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

WALKER, Judge: The merchandise which forms the subject of this protest is described on the invoice as "Semi-Processed Oil," and was accorded free entry under the provisions of paragraph 1733 of the Tariff Act of 1930, providing for petroleum and distillates thereof, but was assessed with a tax or duty at the rate of 4 cents per gallon under the provision for lubricating oil in section 3422 of the Internal Revenue Code (section 601 (c) (4), Revenue Act of 1932). Section 3422, *supra*,. and section 3420 of the said code, providing for the imposition of the tax, read as follows:

SEC. 3420. IMPOSITION OF TAX.

In addition to any other tax or duty imposed by law, there shall be imposed upon the following articles imported into the United States unless treaty provisions of the United States otherwise provide a tax at the rates specified in sections 3422 to 3425, inclusive.

SEC. 3422. PETROLEUM AND DERIVATIVES.

Crude petroleum ½ cent per gallon; fuel oil derived from petroleum, gas oil derived from petroleum, and all liquid derivatives of crude petroleum, except lubricating oil and gasoline or other motor fuel, ½ cent per gallon; gasoline or other motor fuel, 2½ cents per gallon; lubricating oil, 4 cents per gallon; paraffin and other petroleum wax products, 1 cent per pound. The tax on the articles described in this section shall apply only with respect to the importation of such articles.

The oil in question is claimed by plaintiff to be exempt from the taxes imposed by the foregoing sections, or if dutiable thereunder, to be assessable at only ½ cent per gallon under the provision for "all liquid derivatives of crude petroleum, except lubricating oil and gasoline or other motor fuel."

From the oral evidence introduced at the trial of the issue it appears that the merchandise involved consisted of 10,200 gallons of oil which had originated in Texas and had been shipped to a plant at Lachine, Ontario, Canada, to be processed into a mineral oil for medicinal purposes. At Lachine it had been treated with sulphuric acid, neutralized with caustic, and washed with alcohol, and was ready to be put through a process of filtering through fuller's earth, when a fire occurred which destroyed the Canadian processing plant, and, having escaped the fire, it was sent to the plant of the plaintiff-corporation in the United States to be finished into medicinal oil.

According to the testimony of plaintiff's witness Storey, a chemist and petroleum engineer, the oil in question was, after importation, put through the unfinished processes and emerged as a U. S. P. medicinal oil. It was stipulated by counsel for the respective parties—

that the merchandise is used for no other purpose than to make a medicinal oil.

Mr. Storey, whose education and experience in the petroleum field made him eminently qualified to testify on the subject, stated that he analyzed a sample of the oil in question and found it satisfactory for medicinal oil use. It was his opinion, based upon his experience and knowledge, that the merchandise in question is not a lubricating oil. The treatment which it had received with sulphuric acid, he said, had removed therefrom what he called the "body," the asphalts and heavy materials, in excess amounts, and deprived it of its lubricating qualities. It would therefore, he testified, be unable to maintain surface tension on bearings, and hence would be unable to keep the metals apart to offset the friction. It is noted that in his testimony concerning lubricating oils the witness apparently confined such oils to those used to lubricate engines.

On its part the defendant offered the testimony of two Government chemists of long training and experience who conducted various tests of the oil from which they were satisfied, and gave as their opinions, that it was a lubricating oil. It is pointed out in the brief filed on behalf of the defendant that the findings of one of the Government chemists, Dwight A. Bartlett, and Mr. Storey on analysis of the oil placed it within the constants of lubricating oil as set forth on page 542 of the work "Petroleum Technology" by Gurwitsch and Moore with reference to "pale oil."

Dr. Louis B. McSorley, the second Government witness, testified that he had had the bearings of a motor used in the laboratory cleaned and had used a sample of the oil in question to lubricate one end of the shaft thereof, the other being lubricated by the lubricant ordinarily used. This motor, which actuated a grinder, was in service 5 or 6 hours a day for 2 weeks, and the witness testified that he examined

the bearings daily, and at the end of the 2-week period found no difference between the bearings at either end, there being no córrosion, erosion, or any change whatsoever.

The theory behind the classification appears to be that any oil which may be used for lubricating purposes, even for a door hinge or a light sewing machine, falls within the category of "lubricating oil" as used in the revenue act, *supra*.

In our view the term "lubricating oil" as used in the revenue act is what has been termed an *eo nomine* designation suggesting use (*United States* v. *F. W. Myers & Co., Inc.*, 24 C. C. P. A. 464, T. D. 48913), and as such is to be construed, in the absence of evidence of Congressional intent to the contrary, according to the principles governing the doctrine of use which have become well-settled in customs jurisprudence. In the case of an *eo nomine* designation suggesting use, as distinguished from a provision for articles "chiefly used for" a specified purpose, it is the chief use of the class of articles in question at or prior to the passage of the act which controls (*United States* v. *Dyson Shipping Co.*, 27 C. C. P. A. 260, C. A. D. 96).

From the testimony of the witness Storey to the effect that the condition of the oil as imported, by reason of the acid treatment to which it had been subjected prior to importation, precluded it from being successfully used or processed as a lubricating oil and dedicated it to the manufacture of medicinal oil, we think it is a fair inference that the chief use thereof at and prior to the passage of the Revenue Act of 1932 was the same as at the time of importation. These facts obviously would be no less true in 1932 than in 1942.

The mere fact that it is possible to use the oil in question for certain lubricating purposes, or that it is susceptible of such use, would not control classification under the provision in question; it is the chief use which is the test, and we think the record clearly establishes that oil such as that in question is, and was at and prior to the passage of the revenue act, chiefly, if not exclusively, used for the purpose of making medicinal oil. It therefore becomes immaterial that it might be used for lubricating certain motors, machinery, or door hinges; the actual fact is that it is and has been chiefly used for other than lubricating purposes, and hence it is excluded from classification under the provision for lubricating oil.

It is plain from the record that the merchandise at bar is a derivative of crude petroleum, and that it is a liquid, and it therefore takes classification under the provision for "liquid derivatives of crude petroleum" in section 3422, *supra*, at the rate of ½ cent per gallon.

To that extent the protest is sustained, and judgment will issue accordingly.